**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DENNIS T. MICKEL,                )
                                 )
    Plaintiff,               )    3:79-cv-00239-LRH-VPC
                                 )
vs.                              )
                                 )    **ORDER**
CHARLES WOLFF, JR., *et al.*,    )
                                 )
    Defendants.              )
_____ /

This matter comes before the Court with respect to a combined Motion to Intervene, Motion to Enforce Consent Decree, and Request for an Evidentiary Hearing. (Docket #153). The instant motion was filed by Eric Candido, Gary Hawes, Les Graham, Leonel Hernandez, and Country "Singing Horse" Stevens (hereafter "movants"), who are all inmates in the protective custody unit at Lovelock Correctional Center, and who are represented by counsel. Defendants, NDOC officials, filed a response to the motion on September 13, 2007. (Docket #158). Through counsel, movants filed a reply brief on October 2, 2007. (Docket #161).

**I.     Background of the Instant Action**

The named plaintiff in this action, Dennis T. Mickel,[1] who was an inmate at Nevada State Prison at the time of filing this lawsuit, alleged that he was denied the right to practice his Native American religion in violation of the First Amendment. A consent decree was entered in this action on December 23, 1980, by District Judge Reed. (Docket #42). The salient points of the 1980

---

[1] As of October 1, 1980, plaintiff Mickel's pleadings indicate that he was incarcerated within the California Department of Corrections, at the California Medical Facility in Vacaville, California. (Docket #32).

consent decree are as follows:

- Inmates within the Nevada State Prison in administrative segregation or protective custody are individually permitted to participate in Native American religious pipe ceremonies no less frequently than twice per month. These inmates are permitted to access Native American religious materials, literature, and visits to the same extent as other inmates.

- Inmates within the Nevada State Prison with a custody status other than punitive segregation, administrative segregation, or protective custody are permitted to attend Native American religious sweat lodge ceremonies. Inmates in protective custody may attend sweat lodge when such attendance is consistent with their personal health and safety.

- Native American inmates at Nevada State Prison are permitted to access literature and materials concerning their religion in the same manner and to the same extent as other religions.

- Nevada State Prison will provide, or permit inmates to obtain, materials necessary for the construction and maintenance of a sweat lodge within the institution.

- The Post Order and Policy Memorandum adopted pursuant to the consent decree shall impose no greater restrictions upon the rights of inmates at Nevada State Prison, and shall not be revoked, modified, or abridged the practice or participation in Native American religious activities, except when legitimate security interests necessitate curtailment of religious practices in a non-discriminatory fashion.

All of the grants included in the 1980 consent decree are incorporated into the existing Administrative Regulation (AR) 809, which governs Native American religious activities of inmates within the Nevada Department of Corrections (NDOC). AR 809 contains additional and more detailed procedures for Native American practices including pipe ceremonies and sweat lodge, religious materials/supplies needed for pipe and sweat lodge ceremonies, special meals for sweat lodge days, religious visits from spiritual leaders, a Native American Inmate Council, procedures for the inspection of religious materials by correctional staff for security purposes, and other details.

II. **Motion to Intervene, Motion to Enforce Consent Decree, and Request for an Evidentiary Hearing (Docket #153)**

   **A. Movant's Allegations**

Inmates Eric Candido, Gary Hawes, Les Graham, Leonel Hernandez, and Country "Singing Horse" Stevens bring a motion to intervene and to enforce the terms of the consent decree. (Docket #153). The movants are, and were at all relevant times, in Protective Custody/Protective Segregation at Lovelock Correctional Center. Movants are members of the "Tribe of Nation" Native American religious circle, a bona fide religious faith group recognized by the NDOC. Movants assert that they

have been denied rights guaranteed to them under the 1980 consent decree, the First Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), codified at 42 U.S.C. §§ 2000cc-2000cc-5. The crux of movants' allegations are as follows:

- Since May 2006, movants have been barred from participating in sweat lodge ceremonies *with general population inmates*. Instead, movants have been provided a *separate circle for protective custody inmates* to engage in sweat lodge ceremonies. Movants have refused to participate in sweat lodge ceremonies because they claim that other protective custody inmates are "child molesters who do not share their spiritual beliefs."

- Prison officials have interfered with movants' ability to "pray, smudge[2] and gather as a circle in prayer.

- The prison library contains no Native American religious literature and recordings, but does contain such material on other religious faiths.

- Movants have been denied the right to have "prayer blankets" in which to wrap themselves while sitting in prayer. In contrast, Muslim inmates are allowed to have prayer rugs.

- Prison officials have denied movants the ability to engage in "traditional religious observance and ceremony that entails giving and sharing spiritual items with members of their religious circle."

- Prison officials have refused to allow movants to possess various spiritual items; items have been desecrated, confiscated, and/or destroyed. Movants seek the right to possess "spiritual packages" and seek compensation for the confiscated/desecrated items.[3]

**B. Intervention as of Right**

As an initial matter, defendants assert that Rule 24 of the Federal Rules of Civil Procedure requires a proposed complaint in addition to a motion to intervene and declarations. (Defendants' Opposition Brief, at p. 3). A formal complaint would be required if movants had not set forth the grounds for intervention. However, in the motion before this Court, movants have adequately set forth their allegations and grounds for intervention in their motion. *See Beckman Industries, Inc. v.*

---

[2] "Smudging" refers to the Native American practice of "burning of sage and aromatic herbs." This definition is found online at http://findarticles.com/p/articles/mi_g2603/is_0005/ai_2603000543.

[3] The declaration of Country "Singing Horse" Stevens alleges that a piece of religious artwork was ripped off of his wall and destroyed, and that his ceremonial headbands were confiscated and destroyed. Also, his "Sacred Bundle" was confiscated, which included: "Our Sacred Pipe, Ceremonial Drum Stick, sacred herb pouches, Pipe bag, Pipe Bowl bag, red cloth Pipe regalia, small abalone shell (smudge bowl), pipe stem, totem lighter case (White Buffalo), tobacco pouch, matches bag, pipe cleaner sticks (beaded), spiritual choker, sacred red stone and pouch, Rattle, medium sage bag, prayer Feather, small orange handled scissors, altar cloth, and other items." (Stevens Declaration, at pp. 3-4). Several other confiscated items are listed on page 4 of Stevens' declaration, including feathers, beads, needles, nylon thread for bead weaving, a dream catcher, etc. Stevens estimates the value of all confiscated and/or desecrated items to be $2,200.00, plus $424.75 for replacement pipe and regalia. *Id*. at p. 4.

*International Ins. Co.*, 996 F.2d 470, 474 (9th Cir. 1992) (approving intervention without a pleading where court was otherwise apprised of the grounds for the motion). Thus, the failure to include a complaint is not a valid basis for denial of the motion to intervene.

There are four requirements for intervention as of right under Fed. R. Civ. P. 24(a)[4]: (1) the intervention must be timely; (2) the movant must have a sufficiently protectable interest relating to the subject of the action; (3) the movant must be so situated that the disposition of the action may result in the practical impairment of the party's ability to protect that interest; and (4) the movant's interest must not be adequately represented by the existing parties to the lawsuit. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001); *U.S. v. State of Oregon*, 913 F.2d 576, 587 (9th Cir. 1990), *cert. denied*, 501 U.S. 1250 (1991). If the motion to intervene is not timely, the court need not address any other element. *Oregon*, 913 F.2d at 589.

**1. Timeliness**

Timeliness is the threshold requirement for intervention. Courts consider three criteria to evaluate timeliness: the stage of proceeding, prejudice to other parties, and the reason for and length of the delay." *U.S. v. Oregon*, 913 F.2d at 588. Where the intervenor waits until after a consent decree is entered, courts weigh that fact heavily against intervention. *Id.*

In the instant case, the consent decree was filed on December 23, 1980. (Docket #42). Movants filed their motion to intervene on August 6, 2007. (Docket #153). Inmate August Ardagna (who is not one of the current movants)[5] originally sought to intervene in this case on behalf of several inmates at Lovelock Correctional Center, including the current movants, in April 2004. (Docket #68). The motion was later withdrawn (Docket #97) and movants' motion for a settlement conference was granted in June 2005. (Docket #103). During the next year, Magistrate Judge Cooke

---

[4] Rule 24(a) reads: "On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practice matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

[5] August Ardagna has been paroled, which accounts for his absence as a movant in the pending motion to intervene. (Movants' Reply Brief, at fn.1).

4

held four settlement conferences, the last of which occurred on July 19, 2006. (Docket # 137).[6,7]

Movants argue that their delay in filing the instant motion to intervene is justified because their former counsel, Patrick Flanagan, withdrew from the case in April 2007, as he was appointed to a judgeship. (Docket #145). In May 2007, current counsel for movants, Terri Keyser-Cooper and Diane K. Vaillancourt, substituted in as counsel. (Docket #150, #151, #152). Movants explain that their counsel made several attempts to communicate with counsel for defendants in an attempt to reach an agreement, but no success was had, which led to the filing of the instant motion to intervene on August 6, 2007. (Docket #153).

Even taking into consideration movants' proffered reason for delay, and measuring time from the date that inmate Ardagna originally sought to intervene in April 2004, movants are woefully late in light of the stage of the proceedings of this action. Movants first sought to intervene in April 2004, more than 20 years after the consent decree was entered, and filed a proper motion to intervene 27 years after the consent decree.

In the 20-plus years since the consent decree was entered, the law of inmate religious rights has changed drastically. The 1980 consent decree was based on First Amendment law at that time. In 1987, the U.S. Supreme Court set forth a rational basis standard for First Amendment issues arising in the context of prisoner conditions of confinement cases. *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Additionally, the Ninth Circuit has ruled that prisoners are protected by

---

[6] While these settlement conferences were taking place, movants Eric Candido, Gary Hawes, Les Graham, Leonel Hernandez, and Country "Singing Horse" Stevens were transferred from LCC to NSP in August 2005. The subject of the four settlement conferences was disputes between general population inmates and protective custody inmates that had arisen over the use of Native American religious grounds. The parties also discussed AR 809, which governs Native American religious practices, which was revised as a result of the settlement conferences. (Docket #140, Report & Recommendation, filed August 22, 2006).

[7] In January 2006, inmate Mauwee and the Northern Continental Spiritual Circle filed a motion in this action for an order to compel. (Docket #119). Mauwee sought relief from the court because he and other members objected to sharing their Native American religious grounds with protective segregation inmates who were then housed at NSP. Due to the tensions within the prison, by May 2006, most of the protective segregation inmates were relocated from NSP back to LCC where they were provided their own religious grounds. The motion to compel was therefore denied on grounds of mootness. (Docket #140 and #141).

5

the Equal Protection Clause from intentional discrimination on the basis of their religion. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997). Later, the passage of RLUIPA imposed a strict scrutiny standard on prisons with respect to inmate religious issues. 42 U.S.C. §§ 2000cc-2000cc-5. Individuals may assert violations of RLUIPA in judicial proceedings and obtain appropriate relief. § 2000cc-2(a); *Cutter v. Wilkinson*, 544 U.S. 709, 714-16 (2005); *Warsoldier v. Woodford,* 418 F.3d 989, 994 (9th Cir. 2005). To accommodate a prison's need for institutional order and security, Congress adopted the "compelling governmental interest" and "least restrictive means" tests. *Warsoldier v. Woodford,* 418 F.3d at 994.

Finally, the Prison Litigation Reform Act ("PLRA") changed injunctive relief standards in civil actions concerning prison conditions. 18 U.S.C. § 3626. Most significantly, the PLRA states:

> the court shall not grant or approve any prospective relief unless the court finds that such relief if narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A) (1996). Moreover, the PLRA permits a defendant to see the termination or modification of prospective relief where such relief fails to meet the above standard. *See* 18 U.S.C. § 3626(b)(2); *Gilmore v. California*, 220 F.3d 987, 1008 (9th Cir. 2000). The requirements of the PLRA apply to cases pending upon the enactment of the PLRA. *See Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002); *Oluwa v. Gomez*, 133 F.3d 1237, 1239-40 (9th Cir. 1998). In the instant case, the passage of time and significant developments in the statutory and case law have far surpassed the purview of the 1980 consent decree.

In addition to the passage of time and resulting change in the law, allowing movants to intervene at this stage would result in prejudice to defendants. "One of the 'most important' factors in determining timeliness is prejudice to the existing parties." *U.S. v. Oregon*, 913 F.2d at 588. If movants are allowed to intervene, defendants would be called upon to litigate what is essentially a new case – new facts, new plaintiffs, a new location (prison), and new law. The prejudice to defendants caused by movants' untimeliness is substantial and precludes intervention.

///

**2. Interest Relating to the Subject of the Action**

"'[W]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established.'" *Southwest Center for Biological Diversity v. Berg*, 268 F.3d at 818 (quoting *Green v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (internal citation omitted)). "'It is generally enough that the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Southwest Center,* 268 F.3d at 818 (quoting *Sierra Club v. United States EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). At the same time, "[a]n applicant demonstrates a 'significantly protectable interest' when 'the injunctive relief sought by the plaintiffs with have direct, immediate, and harmful effects upon a third party's legally protectable interests.'" *Southwest Center*, 268 F.3d at 818 (quoting *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1494) (9th Cir. 1995)).

The 1980 consent decree is limited in scope, in that it concerns only inmates "within the Nevada State Prison," not all inmates within the Nevada Department of Corrections (NDOC). (Docket #42). Movants assert an equitable and practical interest in protecting the Native American religious rights of all inmates, which is the same basic interest that was the subject of the 1980 consent decree. Assuming, *arguendo*, that movants have a significantly protectable interest relating to the subject of this action, the untimeliness of movants' attempt to intervene overshadows and outweighs this factor.

**3. Practical Impairment of Party's Ability to Protect Interest**

Assuming that movants have a demonstrated a significantly protectable interest, the court must determine whether those interests would, as a practical matter, be impaired or impeded by the disposition of this action. *Southwest Center*, 268 F.3d at 822. Movants assert that they have interests which are not the same as plaintiff Mickel's were at the time the consent decree was entered. However, movants have not identified how or why they are unable to protect their rights without being made parties to the consent decree.

**4. Inadequate Representation by Parties to the Action**

The prospective intervenor bears the burden of demonstrating that the existing parties may

7

not adequately represent its interest. *Southwest Center*, 268 F.3d at 822, citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). The current version of AR 809 includes all of the provisions of the consent decree, as well as additional provisions for the practice of Native American religion available to all NDOC inmates. While movants contend that plaintiff Mickel cannot adequately represent their interests because he is now incarcerated in California, this does not mean that intervention in this action is appropriate. The new allegations made by movants exceed the scope of the consent decree and will not be included as part of this action.

Movants are not entitled to intervention as of right. While movants arguably have a significantly protectable interest, too much time has passed since the entry of the 1980 consent decree for a proper intervention. Allowing intervention at this juncture would result in prejudice to defendants. Moreover, the law governing inmate religious rights has undergone significant changes since the 1980 consent decree. Movants' motion to intervene as of right is denied.

### C. Permissive Intervention

Fed. R. Civ. P. 24(b)(2) allows intervention in an action "when an applicant's claim or defense and the main action have a question of law or fact in common." The movant must also show that the application was timely and that the intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). A party seeking intervention under Rule 24(b)(2) must establish a basis for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying action. *Id.*

In the instant case, the questions of law that led to the consent decree are different from the issues of law that are now applicable to claims of denial of inmate religious rights, such as the violations that movants now assert. *See Turner v. Safley*, 482 U.S. 78 (1987); Religious Land Use and Institutionalized Persons Act (RLUIPA), codified at 42 U.S.C. §§ 2000cc-2000cc-5. That is, because the law of prisoner religious rights has undergone significant change in the past 27 years since the consent decree was entered, it cannot be said that movants' claims and the main action have a common question of law.

Movants' allegations concern inmates' ability to exercise Native American religious rights, thus their claims have a *general* common question of fact to the main action. However, movants

assert new and different allegations than those involved in the main action.  Movants do not have sufficiently similar questions of fact in common to support permissive intervention.  Because movants' claims and the main action do not share common questions of law or fact, and due to the untimeliness of movants' attempt to intervene and prejudice to defendants, the motion for permissive intervention is denied.

### D. Movants are Not Third-Party Beneficiaries

Movants contend that they are intended third-party beneficiaries to the 1980 consent decree. Consent decrees are generally viewed as contractual agreements and are given the status of a judicial decree.  *Hook v. State of Arizona, Dept. of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 1992).  Parties to a contract may create enforceable contract rights in a third-party beneficiary.  *Beckett v. Airline Pilots Association*, 995 F.2d 280, 286 (D.C. Cir. 1993).  However, in the instant case, the plain language of the 1980 consent decree applies to inmates at Nevada State Prison.  There is no language in the consent decree to indicate that enforceable rights were created for inmates at other institutions. Movants are not intended third-party beneficiaries and they cannot enforce the 1980 consent decree on such grounds.

## III. Conclusion

Movants are not entitled to intervention as of right, due to untimeliness, prejudice to defendants, and significant changes in the law of the case.  Movants are not entitled to permissive intervention, due to untimeliness and the lack of common issues of fact and law with the main action.  Moreover, movants are not third-party beneficiaries to the 1980 consent decree and cannot enforce the decree.  Finally, an evidentiary hearing is unnecessary and the request for the same is denied.

**IT IS THEREFORE ORDERED** that movants' Motion to Intervene, Motion to Enforce Consent Decree, and Request for an Evidentiary Hearing (Docket #153) are **DENIED.**

Dated this 4th day of January, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE